**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| D.A., A.A., and LUCINDA DEL CARMEN PADILLA GONZALES, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | EP-22-CV-00295-FM |
| UNITED STATES OF AMERICA, | § § § | |
| Defendant | § | |

<u>**PLAINTIFFS' RESPONSE TO DEFENDANTS' RENEWED MOTION TO DISMISS**</u>

Joe A. Spencer
Joe A. Spencer Attorney & Counselor at Law
1009 Montana Ave
El Paso, TX 79902
(915) 532-5562
Joe@joespencerlaw.com

Anand Swaminathan*
Stephen Weil*
LOEVY & LOEVY
311 North Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

Zachary Manfredi*
Ming Tanigawa-Lau*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003
(305) 484-9260
*Admitted pro hac vice

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT .................................................................................................................... 3

   I.   The Discretionary Function Exception Is Inapplicable Here ............................................ 4

      A.  The Challenged Actions Are Not Susceptible to Policy Analysis ................................. 5

      B.  The Challenged Actions Do Not Involve any Element of Judgement of Choice .......... 8

          1.   Numerous Government Directives Deprived DHS Agents of Discretion to Treat Plaintiffs in the Cruel Manner That They Did ................................................. 9

          2.   The *Flores* Consent Decree Deprived DHS Agents of Discretion to Act as They Did in Separating A.A. and D.A. from Their Mother ............................................ 11

          3.   The Constitution Deprived DHS Agents of Discretion to Act as They Did ......... 14

   II.   The Due Care Exception Has No Application to the Facts Here ....................................... 17

      A.  No Statute or Regulation Mandated the DHS Agents' Cruel Treatment and Separation of Plaintiffs ....................................................................................... 18

      B.  The Government Fails to Establish that DHS Agents Exercised "Due Care" ....... 21

   III.   Plaintiffs' Claims Satisfy the Private Analog Inquiry .................................................. 22

      A.  Private Analog Inquiry Does Not Bar FTCA Claims That Arise in Immigration Context ................................................................................................................ 23

      B.  Texas Law Has Held Private Persons Liable Under Analogous Circumstances ... 25

   IV.   Plaintiffs State Claims For Relief Under Texas Law .................................................... 28

      A.  Plaintiffs State a Claim for Intentional Infliction of Emotional Distress under Texas Law ........................................................................................................... 28

      B.  Plaintiffs State a Claim for Abuse of Process under Texas Law .......................... 30

      C.  Plaintiffs State a Claim for Medical Negligence under Texas Law...................... 31

CONCLUSION ................................................................................................................ 32

**Table of Authorities**

*A.E.S.E. v. United States*, No. 21-CV-0569, 2022 WL 4289930 (D.N.M. Sept. 16, 2022)..........1,8

*A.F.P. v. United States*, No. 1:21-cv-78, 2022 WL 2704570 (E.D. Cal. July 12, 2022) ................1

*A.I.I.L. v. Sessions*, No. 4:19-cv-00481, 2022 WL 992543 (D. Ariz. Mar. 31, 2022)....................1

*A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020)........................................................1

*Air Shuttle Corp. v. United States*, 112 F.3d 532 (1st Cir. 1997) ..................................................28

*Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907 (5th Cir. 1993) ................................28

*Appleton v. United States*, 180 F. Supp. 2d 117 (D.D.C. 2002) ....................................................28

*Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287 (7th Cir. 1984)....................................27

*Avalos-Palma v. United States*, No. 13-cv-5481 2014 WL 3524758 (D.N.J. July 16, 2014) .......24

*B.A.D.J. v. United States*, No. 21-cv-215, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022)  .......1,24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................................3

*Berkovitz by Berkovitz v. United States*, 486 U.S. 531 (1988).........................................................5

*Bhuiyan v. United States*, No. 14-cv-00013, 2017 WL 2837023 (N.M.I. June 30, 2017).............28

*Brokaw v. Mercer Cty.*, 235 F.3d 1000 (7th Cir. 2000)..................................................................17

*Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005)................................................................................17

*Brown v. State*, 91 S.W.3d 353 (Tex. Civ. App.—Eastland 2002)................................................25

*Buchanan v. United States*, 915 F.2d 969 (5th Cir. 1990).............................................................18

*Bunikyte ex rel. Bunikiene v. Chertoff*, No. 07-CA-164, 2007 WL 1074070

   (W.D. Tex. Apr. 9, 2007).........................................................................................................13

*C.M. v. United States*, No. 19-cv-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ...............1

*Carcamo-Lopez v. Does 1 Through 20*, 865 F. Supp. 2d 736 (W.D. Tex. 2011).........................26

*Castro v. United States*, 560 F.3d 381 (5th Cir. 2009)  .................................................................15

*Cazales v. Lecon, Inc.*, 994 F. Supp. 765 (S.D. Tex. 1997)............................................................4

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ..............................17

**Table of Authorities**

*Chen v. United States*, 854 F.2d 622 (2d Cir. 1988) ..........................................................................28

*Chess v. United States*, 836 F. Supp. 2d 742 (N.D. Ill. 2011) .........................................................9

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d (5th Cir. 2000).................................................3

*D.B. v. Poston*, 199 F. Supp. 3d 472 (E.D. Va. 2015) .......................................................................13

*D.J.C.V. v. United States*, No. 20-cv-5747 (S.D.N.Y. June 3, 2022) ............................................1

*Dupree v. United States*, 247 F.2d 819 (3d Cir. 1957)....................................................................18

*E.C.B. v. United States*, No. 22-cv-009150 (D. Ariz. Nov. 8, 2022)..............................................1

*E.S.M. v. United States*, No. 21-cv-29, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022)...................2

*Elgamal v. United States*, No. 13-cv-867, 2015 WL 13648070, (D. Ariz. July 8, 2015) ..........28

*F.R. v. United States*, No. 21-cv-339, 2022 WL 2905040 (D. Ariz. July 22, 2022)...................2,4

*Faber v. United States*, 56 F.3d 1122 (9th Cir. 1995) ........................................................................9

*Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015 (9th Cir. 2020)......................................14

*Ferguson v. United States*, No. 15-cv-1253, 2016 WL 4793180 (S.D. Cal. Sept. 14, 2016)......18

*Flores v. Reno*, No. 85-cv-4544 (C.D. Cal. July 24, 2015) ..............................................................11

*Flores v. Sessions,* No. 85-cv-4544, 2018 WL 4945000 (C.D. Cal. July 9, 2018).........................12

*Freilich v. Green Energy Res., Inc.*, 297 F.R.D. 277 (W.D. Tex. 2014) .........................................3

*Garcia-Feliciano v. United States*, No. 12-cv-1959, 2014 WL 1653143
    (D.P.R. Apr. 23, 2014)...............................................................................................................19

*Gibson v. United States*, 809 F.3d 807 (5th Cir. 2016).....................................................................5

*Gonzalez v. United States*, No. 12-CV-01912, 2013 WL 942363, (C.D. Cal. Mar. 11, 2013)....18

*Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472 (Tex. Civ. App.—Dallas 2010) ........................26

*GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999) .....................................................................28

*Hatahley v. United States*, 351 U.S. 173 (1956)..............................................................................21

*Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463 (7th Cir. 2011) .........................................17

*Holcombe v. United States*, 388 F. Supp. 3d 777 (W.D. Tex. 2019)...............................................26

**Table of Authorities**

*Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573 (5th Cir. 2015)....................................................26

*Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155 (1st Cir. 1987)...................................21,22

*Indian Towing Co. v. United States*, 350 U.S. 61 (1955) ............................................................22

*In re Katrina Canal Breaches Consol. Litig.*, 627 F. Supp. 2d 656 (E.D. La. 2009) ....................5

*Jacinto-Castanon de Nolasco v. ICE*, 319 F. Supp. 3d 491 (D.D.C. 2018) ...........................13,16

*Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193 (Tex. 2002)...............................................26

*Kaniff v. United States*, 351 F.3d 780 (7th Cir. 2003).....................................................................25

*Keller v. United States*, 771 F.3d 1021 (7th Cir. 2014) ....................................................................7

*Kwai Fun Wong v. Beebe*, No. 01-cv-718, 2006 WL 977746, (D. Or. Apr. 10, 2006) ..............18

*Limone v. United States*, 579 F.3d 79 (1st Cir. 2009).....................................................................14

*Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012)................................................................24,27

*Loumiet v. United States*, 828 F.3d 935 (D.C. Cir. 2016)...............................................................14

*Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997) ...................................................3

*Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921 (5th Cir. 1988)..............................3

*Marlys Bear Med. v. United States ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208
(9th Cir. 2001)....................................................................................................................................7

*Martinez v. United States*, 822 F. App'x 671 (10th Cir. 2020).......................................................14

*Mayorov v. United States*, 84 F. Supp. 3d 678 (N.D. Ill. 2015) ............................................7,23,24

*Mazur v. United States*, 957 F. Supp. 1041 (N.D. Ill. 1997) .........................................................28

*McGowan v. United States*, 825 F.3d 118 (2d Cir. 2016)...............................................................27

*Medina v. United States*, 259 F.3d 220 (4th Cir. 2001) .................................................................14

*Moher v. United States*, 875 F. Supp. 2d 739 (W.D. Mich. 2012) ...........................................18,22

*Ms. L. v. U.S. Immigration & Customs Enf't*, 302 F. Supp. 3d 1149 (S.D. Cal. 2018) ................16

*Myers & Myers Inc. v. USPS*, 527 F.2d 1252 (2d Cir. 1975) .........................................................15

**Table of Authorities**

*Norris v. Causey*, 869 F.3d 360 (5th Cir. 2017) ...........................................................27

*Nunez-Euceda v. United States*, No. 2:20-cv-10793, 2021 WL 4895748
   (C.D. Cal. Apr. 27, 2021)...........................................................................................1

*United States v. Olson*, 546 U.S. 43 (2005) ...............................................................23

*Owen v. United States*, 935 F.2d734 (5th Cir. 1991)..................................................23

*Palay v. United States*, 349 F.3d 418 (7th Cir. 2003)...................................................9

*Parks v. Kownacki*, 737 N.E.2d 287 (Ill. 2000).........................................................27

*Plyler v. Doe*, 457 U.S. 202 (1982)............................................................................17

*Prescott v. United States*, 973 F.2d 696 (9th Cir. 1992).............................................18

*Prince v. Massachusetts*, 321 U.S. 158 (1944)...........................................................15

*Quilloin v. Walcott*, 434 U.S. 246 (1978) ..................................................................15

*Raz v. United States*, 343 F.3d 945 (8th Cir. 2003) ...................................................14

*Ruiz v. United States*, No. 13−CV−1241, 2014 WL 4662241, (E.D.N.Y. Sept. 18, 2014) ..........7

*Ryan v. ICE*, 974 F.3d 9 (1st Cir. 2020) ....................................................................27

*S.V. v. R.V.*, 933 S.W.2d 1 (Tex. 1996).......................................................................27

*Santosky v. Kramer*, 455 U.S. 745 (1982) .................................................................15

*SEC v. Life Partners Holdings, Inc.*, No. 1:12-cv-033, 2012 WL 12918374
   (W.D. Tex. Apr. 19, 2012)...........................................................................................3

*Silcott v. Oglesby*, 721 S.W.2d 290 (Tex. 1986).........................................................25

*Smith v. Smith*, 720 S.W.2d 586 (Tex. Civ. App.—Houston 1986) ............................25

*St. Paul Med. Ctr. v. Cecil*, 842 S.W.2d 808 (Tex. Civ. App.—Dallas 1992) ........26,32

*Sutton v. United States*, 819 F.2d 1289 (5th Cir.1987) ...............................................15

*Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007)..................................................23

*Texas Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30 (Tex. 2002)................................26,31

**Table of Authorities**

*THI of Texas at Lubbock I, LLC v. Perea*, 329 S.W.3d 548
(Tex. Civ. App.—Amarillo 2010)............................................................26

*Troxel v. Granville*, 530 U.S. 57 (2000) ......................................................15

*Turner v. Pleasant*, 663 F.3d 770 (5th Cir. 2011) .........................................3

*U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116 (3d Cir. 1988)...........15

*United States v. Gaubert*, 499 U.S. 315 (1991) ..........................................4,7

*United States v. Muniz*, 374 U.S. 150 (1963)................................................23

*United States v. Olson*, 546 U.S. 43 (2005)..................................................23

*United States v. Ponce*, 896 F.3d 726 (5th Cir. 2018) ..................................19

*W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018)............................16

*Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010) .......................26

*Watson v. United States*, 179 F. Supp. 3d 251 (E.D.N.Y. 2016) ...................20

*Weirich v. Weirich*, 796 S.W.2d 513 (Tex. Civ. App.—San Antonio 1990)...............25

*Welch v. United States*, 409 F.3d 646 (4th Cir. 2005) ........................... *passim*

*Wilbur P.G. v. United States*, No. 4:21-cv-4457 (N.D. Cal. May 10, 2022) ...................1

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)......................................................15

*Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010) ...........................................24

*Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993) ............................................19

**Table of Authorities**

**STATUES and REGULATIONS**

Tex. Fam. Code § 42.002................................................................................................25

8 U.S.C. § 1232.................................................................................................13,19

8 U.S.C. § 1182...................................................................................................20

8 C.F.R. § 235.3..................................................................................................20

8 C.F.R. § 1236.3..............................................................................................10,11

28 U.S.C. § 2680.................................................................................................17

28 U.S.C. § 2674.................................................................................................22

## INTRODUCTION

This lawsuit alleges that immigration officers working for the Department of Homeland Security ("DHS") subjected Plaintiffs Lucinda Padilla-Gonzalez, and her minor children A.A. and D.A.—an immigrant family escaping violence—to treatment so harsh and deliberately cruel that it could be fairly described as torturous. Plaintiffs bring suit under the Federal Tort Claims Act ("FTCA") based on various state common law torts, including negligence, breach of fiduciary duty, and intentional infliction of emotion distress. The government has filed a motion to dismiss arguing that because it generally has authority to enforce immigration laws, there is no remedy for the DHS agents' gross misconduct. The government's arguments are without merit.

Indeed, this case is one of many related cases in which immigrant families have brought suit under the FTCA based on the actions of DHS agents that subjected them to harsh treatment, including the separation of parents and children under the cruelest of circumstances. The Government's motion fails to mention that courts across the country have *repeatedly rejected* the Government's motions to dismiss, which raised the exact same arguments made here. *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 997-8 (D. Ariz. 2020); *Nunez Euceda v. United States*, No. 220CV10793VAPGJSX, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021); *A.I.I.L. v. Sessions*, No. 4:19-cv00481-JAS, 2022 WL 992543, at *4 (D. Ariz. Mar. 31, 2022); *E.C.B. v. United States*, No. CV 22-009150PHX-CDB (D. Ariz. Nov. 8, 2022) (attached as Exhibit 1); *Wilbur P.G. v. United States*, No. 4:21-cv-4457-KAW (N.D. Cal. May 10, 2022) (attached as Exhibit 2); *A.F.P. v. United States*, No. 121CV00780DADEPG, 2022 WL 2704570, at *1 (E.D. Cal. July 12, 2022); *A.E.S.E. v. United States*, No. 21-CV-0569 RB-GBW, 2022 WL 4289930, at *13 (D.N.M. Sept. 16, 2022); *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022); *D.J.C.V. v. United States*, 20 Civ. 5747 (PAE) (S.D.N.Y.

June 3, 2022) (attached as Exhibit 3); *E.S.M. v. United States*, No. CV-21-00029-TUC-JAS, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022); *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *1 (D. Ariz. July 22, 2022). The Government presents no basis for this Court to reach a different conclusion than the many sister courts that have considered the Government's motion and rejected it.

## **FACTUAL BACKGROUND**

Plaintiff Lucinda Padilla-Gonzalez and her two children, five and fourteen years old, fled political violence in their native Honduras and arrived in the United States seeking asylum. 1AC (Dkt. 35) ¶19. The DHS agents they encountered, however, subjected them to sustained mistreatment, much of it inflicted for the specific purpose of traumatizing the family. *Id.* ¶¶5, 25.

DHS agents insulted the children and their mother, calling them liars and telling them that the officers were tired of immigrants. *Id.* ¶19. From the first day of captivity, the family was held together in a "*hielera*" ("icebox"), named for its infamous cold temperatures. *Id.* ¶¶20-22. Lucinda's leg had been injured, but when doctors gave her crutches to use, officers took them away. *Id.* ¶¶22-23. Then, the officers separated Lucinda and her children without warning or explanation, preventing them from even hugging each other to say goodbye. *Id.* ¶24. The purpose for this separation, and attendant treatment, was to inflict trauma on the family, and DHS agents used the separation to try to coerce Lucinda into giving up their asylum claims. *Id.* ¶¶24-26. DHS agents sent A.A. and D.A. alone to a refugee center in Chicago, even though Lucinda's husband (and the children's father) Luis was in the United States and was desperate to take custody of the children. *Id.* ¶27-51. The children were separated from their family and held by strangers for more than a month, without any communication with their mother. *Id.*

Meanwhile, federal officials continued to mistreat Lucinda. She was charged with misdemeanor unlawful entry, for which she was "sentenced" to probation a few days later. *Id.*

¶53. DHS agents then shackled her and put her in a van to drive her to a deportation plane. *Id.* ¶55. But they did not buckle her in, and along the way a sudden stop threw her against the bars of the vehicle, causing her to suffer a traumatic brain injury. *Id.* ¶¶55, 57. DHS agents then denied her access to medical care for the injuries they caused, allowing her to languish with severe symptoms while fellow detainees cared for her. *Id.* ¶58.

The children remained in a shelter for more than a month before finally being released to their father, and eventually reunited with their mother. Lucinda continues to suffer from her untreated concussion, and both children remain extremely traumatized by their terrifying, and purposeful, separation from their parents. *Id.* ¶¶56, 61-65.

## ARGUMENT

To analyze a dismissal motion, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). Dismissal is appropriate "only if the complaint fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the dismissal stage, the question for the court "is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'" *Freilich v. Green Energy Res., Inc.*, 297 F.R.D. 277, 281 (W.D. Tex. 2014) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). Under this "strict standard of review, . . . a court will only rarely encounter circumstances that justify granting . . . a [Rule 12(b)(6)] motion." *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, No. 1:12-CV-033-JRN, 2012 WL 12918374, at *1 (W.D. Tex. Apr. 19, 2012) (citing *Lowrey*, 117 F.3d at 247; *Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988)).

The facts allege in the Amended Complaint set out multiple common law torts on which Plaintiffs' claims are based. 1AC ¶¶95-168 (identifying in the counts each common law theory of liability against the United States, including intentional infliction of emotional distress ("IIED"), breach of fiduciary duty, negligence, abuse of process, and loss of consortium). Critically, the government does not argue in its motion that Plaintiffs have failed to state a claim as to any of those claims. These expressly identified common law theories of liability are based on the plainly tortious conduct of immigration officers as summarized above. And as discussed below, such theories of liability under the FTCA have been repeatedly accepted by courts in nearly identical circumstances. *See, e.g.*, *C.M. v. United States*, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) (permitting FTCA case to go forward on similar state common law theories of liability for DHS agents' conduct); *F.R. v. United States*, 2022 WL 2905040, at *3; *E.S.M.*, 2022 WL 11729644, at *5.

## I.     The Discretionary Function Exception Is Inapplicable Here

The federal immigration agents that acted to separate D.A. and A.A. from their mother are not protected by the discretionary function exception ("DFE"). The DFE bars claims based on governmental actions that (1) involve an element of judgment or choice, and (2) involve public policy considerations. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). *Berkovitz v. United States*, 486 U.S 531, 536 (1988).  The DFE is an affirmative defense to liability under the FTCA, and although a plaintiff bears the initial burden of proving that subject matter jurisdiction exists under the FTCA, the United States bears the ultimate burden of proving that discretionary function exception applies in particular case. *See Cazales v. Lecon, Inc.*, 994 F. Supp. 765 (S.D. Tex. 1997) (plaintiff bears initial burden of proving that subject matter jurisdiction exists under the FTCA; however, the United States bears ultimate burden of proving that discretionary

function exception applies in particular case). Once a plaintiff has pleaded some mandated conduct that would remove discretion, the burden shifts to the United States "to demonstrate that the decisions which it claims are shielded by the discretionary function exception are indeed subject to the exercise of judgment."). *See In re Katrina Canal Breaches Consol. Litig.*, 627 F. Supp. 2d 656, 666 (E.D. La. 2009) (citing *Ashford v. United States*, 511 F.3d 501, 504 (5th Cir. 2007)).

Here, Plaintiffs have pleaded facts permitting the inference that the DHS agents' conduct was contrary to various mandates set forth in various regulations and other government directives, the *Flores* consent decree, and the United States Constitution. The Government's argument to the contrary consists primarily of challenges to Plaintiffs' well-pleaded allegations. But not only is this improper at the motion to dismiss stage, the Government had failed to meet its burden of proving the DFE applies. Indeed, as discussed above, every court to consider the Government's invocation of the DFE exception in cases involving the separation of immigrant families has denied the Government's motion to dismiss. *See supra* at 1.

## A.      The Challenged Actions Are Not Susceptible to Policy Analysis

The DFE was "designed to shield . . . legislative and administrative decisions grounded in social, economic, and political policy." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). But the government's assertion that an action falls within the DFE does not make it so; the government must instead establish that the conduct at issue amounted to a "permissible exercise of policy judgment." *In re Katrina Canal Breaches*, 627 F. Supp. 2d at 669 (citing *Berkovitz*, 486 U.S. at 537). "The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy." *Gibson v. United*

*States*, 809 F.3d 807, 813 (5th Cir. 2016). The government action at issue here cannot be characterized as such a policy judgement, and the DFE accordingly does not apply.

Given the government's attempts to rewrite the complaint, Dkt. 73 at 10-17, it is important to make clear what this case is not about: this is not a case about the so-called Zero-Tolerance Policy that the government now acknowledges it has "terminated"; federal immigration policy; the authority of federal prosecutors to criminally charge asylum seekers crossing the border; or which facility of many to place Plaintiff into. The parties do not dispute that the Government has the power and authority to set policy in these areas.

Rather, as the Amended Complaint alleges, this is a case about the actions of individual DHS agents who deliberately subjected a mother and her children to torturous treatment: detaining them in freezing cold and other harsh conditions; separating the children from their mother without warning or explanation; cutting off all communication between them for weeks; subjecting them to threats, insults and abuse; denying the mother access to needed medical care, including for injuries DHS agents themselves caused while negligently driving a vehicle and failing to buckle her in; using threats and pressure to try to compel them to give up their rights; and placing the children in a shelter thousands of miles away for more than a month instead of with their father, who was anxious and able to take custody of them.[1]

These are not decisions susceptible to policy analysis. They are not policy decisions at all. Even if the high-level decision to implement a "zero-tolerance" policy to detain individuals like Plaintiffs and criminally prosecute the parents may have been "grounded in policy considerations," the decision of individual DHS agents to deliberately subject Plaintiffs to prolonged separation and detention, along with various other forms of cruel treatment, was not.

---

[1] These claims can generally be classified in two categories: claim based on Plaintiffs' separation, and claims based on the various forms of cruel and tortious treatment to which Plaintiffs were subjected while in custody. The vast majority of the government's brief is focused exclusively on the former.

*See In re Katrina Canal Breaches*, 627 F. Supp. 2d at 689 ("The *decision* to adopt safety precautions may be based in policy considerations, but the *implementation* of those precautions is not." *(quoting Marlys Bear Med. v. United States ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1215 (9th Cir. 2001)) (emphasis added)); *Gibson*, 809 F. 3d at 816; *Keller*, 771 F.3d at 1025 (refusing to apply DFE where record permitted inference that government actions were based on laziness or inattentiveness rather than "grounded in public policy considerations"); *Mayorov*, 84 F. Supp. 3d at 693 (rejecting DFE where ICE agent "was not tasked with incorporating policy-related judgments into his detainer decisions").

    *Ruiz v. United States*, 2014 WL 4662241, at *5 (E.D.N.Y. Sept. 18, 2014), is particularly instructive. In *Ruiz*, a father brought IIED and negligence claims under the FTCA arising from CBP's detention of his four-year-old daughter, a U.S. citizen. The court rejected the government's DFE defense, reasoning that CBP officers' "treatment of" the child during her detention "cannot be said to be susceptible to policy analysis." *Id.* at *8. The court could not "discern how deciding to wait fourteen hours before contacting [the child's] parents and to only provide the child with a cookie and a soda over twenty hours could constitute a considered judgment grounded in social, economic, or political policies." *Id.*; *see also Gaubert*, 499 U.S. at 324-25 n.7 (remarking that while a government agent may exercise "discretion" in driving a car, any decisions made to drive the car are not grounded in public policy, rendering DFE inapplicable); *Marlys Bear Med.*, 241 F.3d at 1215 ("[O]nce the Government has undertaken responsibility for the safety of a project, the execution of that responsibility is not subject to the [DFE].").

    Here, the DHS agents' months-long detention of Plaintiffs, and prolonged separation of the children from their mother while their father was actively trying to obtain their release to his

custody, was not a policy judgment. *See A.E.S.E. v. United States*, No. 21-CV-0569 RB-GBW, 2022 WL 4289930, at *13 (D.N.M. Sept. 16, 2022) ("Plaintiffs have met their burden to show that the decision to retain A.E.S.E. in detention is unrelated to relevant policy considerations and will deny the motion to dismiss on this basis.").

Likewise, the Government fails to explain how the various forms of cruel and reckless conduct to which it subjected Plaintiffs during their custody—putting aside, for the moment, the separation itself—were susceptible to policy analysis. Instead, it simply lumps them all together as "conditions of confinement," asserting such challenges are routinely barred by the DFE. Dkt. 73 at 21-23. But the government merely cites a long list of non-binding, out-of-circuit cases, the vast majority of which do not directly address the treatment at issue here or contain any discussion of the applicability of the policy prong of the DFE to that treatment.

So, for example, DHS agents failed to place a seat belt on Lucinda after shackling her arms behind her back, causing her to be injured while transporting her. Agency regulations expressly required officers to ensure that "vehicles were equipped with seatbelts [and] detainees are properly secured before the transport begins." 1AC ¶¶ 55, 84. There is no discretion; the DHS agents had an obligation to place a seat belt on Lucinda and failed to do it. The government has failed in its burden to establish that this and the other actions actually at issue in the Amended Complaint are susceptible to policy analysis, and on that basis alone, this Court should find the DFE inapplicable.

## B.    The Challenged Actions Do Not Involve any Element of Judgment or Choice

The government also fails the first prong of the DFE because the challenged actions do not involve any element of judgment or choice. The government may have discretion in choosing how strictly to enforce immigration laws, and whether to criminally prosecute people who cross

the border. Federal immigration agents do not, however, have discretion to engage in the numerous torturous actions alleged in the Amended Complaint and outlined above.

All of these actions were proscribed by the government's obligations under the *Flores* agreement, by directives issued by DHS and its agencies, and by the Constitution of the United States. Plaintiffs' Amended Complaint details how these authorities deprived the federal agents of discretion to act as they did in this case. 1AC ¶¶66-84. The government's response barely addresses any of these authorities directly. It instead recites general principles of executive authority and discretion in the areas of immigration and criminal prosecution that are undisputed and irrelevant. Indeed, even where the government cites to executive orders and Department of Justice guidance specific to the so-called "zero tolerance policy," conspicuously absent from those citations is any statement whatsoever granting discretion to separate parents from minor children, to do so in torturous fashion, or to deviate from the strictures of *Flores*, agency rules, or the Constitution.

### 1. Numerous Government Directives Deprived DHS Agents of Discretion to Treat Plaintiffs in the Cruel Manner That They Did

The DHS agents here violated multiple, non-discretionary duties intended to protect immigrant detainees, and in particular children like D.A. and A.A. The violation of these duties precludes application of the DFE. *Berkovitz*, 486 U.S. at 544 ("When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply."); *Palay*, 349 F.3d at 431 (DFE would not apply to conduct in contravention of agency directives); *Faber v. United States*, 56 F.3d 1122, 1125-26 (9th Cir. 1995) (same); *Chess v. United States*, 836 F. Supp. 2d 742, 750 (N.D. Ill. 2011) (same).

Here, federal regulations required DHS agents to prioritize release to family members, and CBP rules required agents to maintain family unity "absent a legal requirement or an

articulable safety concern that requires separation." 1AC ¶¶75-77 (citing 8 C.F.R. § 1236.3, CBP's TED Standards). Likewise, various CBP rules prohibited the freezing temperatures, insulting and demeaning treatment, and other harsh conditions Plaintiffs faced. 1AC ¶¶79-87; *see also*, *A.E.S.E,* 2022 WL 4289930, at *10-11 ("TEDS Standards set forth explicit minimal requirements regarding the conditions under which detainees maybe held. . . . It was not within the officers' discretion to deny Plaintiffs these basic requirements in light of the TEDS Standards and the Flores Agreement."). Moreover, federal regulations and CBP directives prohibited DHS agents from using harsh treatment and threats to pressure Lucinda into giving up her immigration claims. 1AC ¶¶93-94. And the DHS agents inarguably violated agency rules when they transported Lucinda in dangerous fashion in a vehicle without a seat belt, recklessly caused an accident, and then denied her the medical care she needed for the injuries she sustained. 1AC ¶¶84-85.

Courts have recognized that the DFE does not apply to government conduct that violates these kinds of non-discretionary regulations. *See, e.g.*, *Chess*, 836 F. Supp. 2d at 750. With the exception of Plaintiffs' claims based on their separation, the government does not address any of these tortious acts head on. Instead, as discussed above, it characterizes the entirety of Plaintiffs' claims of tortious conduct beyond the family separation itself as "conditions of confinement" and provides a string cite regarding such generalized claims.  To the extent the government addresses these claims at all, the government cherry-picks specific allegations in the Amended Complaint in an attempt to reframe Plaintiffs' case as one about conditions of confinement or choice of facilities. Dkt. 73 at 21-23. That is wrong. Plaintiffs' allegations must be taken together with all others in the Amended Complaint. Together, they give rise to Plaintiffs' underlying state tort claims, including IIED, breach of fiduciary duty, negligence, and assault and battery. 1AC ¶¶96-

168. *C.M.* rejected a nearly identical challenge by the Government. *See C.M.*, 2020 WL 1698191, at *4, n.5. In that case, the court declined to "parse the [c]omplaint to assess whether claims with respect to individual factual allegations are barred," noting that the complaint incorporated all facts into each count, and that evaluation of which facts could or could not prove a claim would be premature. *Id.* at *4; see also *A.F.P.*, 2022 WL 2704570, at *13. The same conclusion applies here. 1AC ¶¶95-168. Because the government does not meaningfully argue that the regulations and directives discussed in Plaintiffs' Amended Complaint do not apply, the Government cannot establish the application of the DFE. Moreover, as to Plaintiffs' separation itself, the Government simply disputes Plaintiff's well-pleaded allegations that their separation was barred by statute and CBP rules, Dkt. 73 at n.9, a violation of the motion to dismiss standard.

### 2. The *Flores* Consent Decree Deprived DHS Agents of Discretion to Act as They Did in Separating A.A. and D.A. from Their Mother

DHS agents also have a well-established legal obligation to preserve family unity whenever possible, and to ensure the prompt release of minors held in immigration custody. *See Flores v. Reno*, No. 85-cv-4544, Dkt. No. 177 (C.D. Cal. July 24, 2015); 8 C.F.R. § 1236.3. The *Flores* class action litigation, brought on behalf of minor children held in immigration detention, resulted in a 1997 consent decree that remains binding on the United States. The decree, under which the government assumed responsibility to ensure that children placed in ORR custody are in "facilities that are safe" and acknowledged "the particular vulnerability of minors," also significantly limits the circumstances, duration, and manner of immigration detention of minor children such as Plaintiffs D.A. and A.A. 1AC ¶¶67-73.

Plaintiffs have plausibly alleged that federal agents violated the requirements of *Flores* in their treatment of D.A. and A.A. Among other things, DHS agents separated Plaintiffs in cruel

fashion as punishment to Lucinda and not based on any reasonable belief that she was an unfit parent; they placed the children in a shelter rather than with their father whose desperation to take custody of his children was known to DHS agents within hours of Plaintiffs' detention;[2] they subjected the children to freezing cold and other harsh conditions over multiple days; and they denied the children the ability to call their mother and severely limited their communication with their father. 1AC ¶¶67-73. All of these actions violated *Flores*.

In addition, under *Flores* the DHS agents did not have discretion to separate the children from their mother and transfer them to ORR custody, rather than releasing them to the care of their father, without Lucinda's consent. As the judge overseeing the *Flores* consent decree explained, the *Flores* agreement created a right to have children placed into ORR custody and out of family detention. But a parent could always waive that option. In other words, *a detained parent* could choose whether to maintain family unity in detention, have the children released to a shelter overseen by ORR, or have the children released to the care of a relative; "[government agents] may not make this choice for them." *Flores v. Sessions,* 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018).

The Government justifies its action by labeling Plaintiffs A.A. and D.A. as "Unaccompanied Alien Children" ("UACs"). But that is not the case. To be a UAC, the child must be one for whom "there is no parent or legal guardian in the United States or no parent or legal guardian in the United States [who] is available to provide care and physical custody." Dkt.

---

[2] The Government argues that the reason for the five-week delay in releasing the children to their father was "occasioned by discretionary decisions regarding the protection of the health and safety of children in the government's custody and care." Dkt. 41 at 14. This claim directly contradicts the allegations in the Amended Complaint that there was no uncertainty about the parentage or fitness of either of A.A. and D.A.'s parents. 1AC ¶¶30, 77. The government simply rejects these allegations, and instead offers unsubstantiated and disputed justifications for the failure to place the children with their father. Its argument must be rejected. Its purported justifications are to be tested in discovery, not accepted as true on a motion to dismiss.

73 at 3; *see also* 8 U.S.C. § 1232(g) (TVPA uses the same definition). Plaintiffs were accompanied by their mother, and their father was available to provide care. Contrary to the government's claim, neither *Flores* nor the Trafficking Victims Protection Reauthorization Act permitted treating Plaintiffs A.A. and D.A. as UACs or separating them. *See Flores*, 2018 WL 4945000 at *4 (rejecting government's argument that *Flores* agreement required them to separate detained parents and children); *Bunikyte ex rel. Bunikiene v. Chertoff*, 2007 WL 1074070, at *2 (W.D. Tex. Apr. 9, 2007) ("[C]hildren who are apprehended by DHS while in the company of their parents are not in fact 'unaccompanied' and if their welfare is not at issue, they should not be placed in ORR custody."). The government's claim to the contrary is simply wrong, and in any event, to accept the government's position would be to reject Plaintiffs' well-pleaded facts in favor of the government's contrary, contested factual claims.[3] That would violate the motion to dismiss standard.

That Lucinda was charged with a criminal misdemeanor does not change the analysis. *See Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*, 319 F. Supp. 3d 491, 495 n.2 (D.D.C. 2018) (holding that even though the plaintiff mother was prosecuted, her children were "not true unaccompanied minors"). Even if this Court were to disagree and conclude that DHS agents had discretion to separate A.A. and D.A. from their mother (and place

---

[3]  The government cites to *D.B. v. Poston*, 199 F. Supp. 3d 472 (E.D. Va. 2015), to assert that its decision to treat the children as UACs is itself discretionary and therefore triggers the DFE. But *Poston*, a district court case from a different circuit, did not involve FTCA claims at all, and involved an entirely different fact pattern: there, plaintiff brought a habeas corpus petition to secure the release of her son from ORR custody, where he was apprehended near the border *by himself*. As that case noted, a child is only a UAC if they are not with a parent or legal guardian "at the time off apprehension." *Id.* at 480. The case is thus wholly inapplicable.

The government's argument is, frankly, nonsense. As it would have it, the DFE would bar every FTCA claim unless there was a clear prohibition of the conduct at issue in some government regulation. And where, as here, such a prohibition existed, the DFE would still bar the claim because the failure to follow that prohibition is simply the discretionary exercise of interpreting the language of the prohibition. That is sensibly not the law, as it would render the entire FTCA a nullity.

them in a shelter rather than with their father) while Lucinda was in BOP custody, there was still no excuse for failing to reunite Plaintiffs a few days later when Lucinda's criminal case ended and she was returned to immigration detention. Whatever discretion may have existed to separate them previously was gone at that time, and the children should either have been reunited with their mother or released to the custody of their father. They were not, and instead spent an extra month in the Heartland shelter rather than with their parents. In other words, even if the Court were to reject Plaintiffs' well-pleaded allegations and conclude that the DHS agents had the discretion to separate Lucinda and her children while she was being criminally prosecuted, that would justify less than a week of Plaintiffs' month-long separation.

Through *Flores* and the agency rules discussed above, the government took responsibility for the care of vulnerable minors and immigrant detainees coming across the American border. And in doing so, it placed restrictions on DHS agents and deprived them of discretion to take certain actions. Because DHS agents did not have the discretion to take the actions challenged here, the DFE is inapplicable.

### 3.    The Constitution Deprived DHS Agents of Discretion to Act as They Did

The DFE is also inapplicable here because DHS agents violated Plaintiffs' constitutional rights and government officials do not have the "discretion" to violate the Constitution. *See Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1065 (9th Cir. 2020) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's [DFE] will not apply.")); *Martinez v. United States*, 822 F. App'x 671, 676 (10th Cir. 2020) ("Most circuits also have held conduct is not discretionary when it 'exceeds constitutional bounds."); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016); *Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003); *Medina v. United States*,

259 F.3d 220, 225 (4th Cir. 2001); *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987); *Myers & Myers Inc. v. USPS*, 527 F.2d 1252, 1261 (2d Cir. 1975); *see also C.M.,* 2020 WL 1698191, at *4 (on nearly identical facts, finding Constitution limited discretion of DHS agents and refusing to apply DFE); *A.P.F,* Dkt. 36 (same). Although the caselaw in this Circuit is admittedly murkier, in *Sutton v. United States*, 819 F.2d 1289 (5th Cir.1987), the Fifth Circuit stated that it had "not hesitated to conclude" that the DFE does not bar a claim based upon "government agents exceed[ing] the scope of their authority as designated by the Constitution[.]" *Id.* at 1293; *see also Castro v. U.S.*, 560 F.3d 381, 388-90 (5th Cir. 2009) (vacated by *en banc* court in 608 F.3d 266 (5th Cir. 2010) (*per curiam*), without specifically overruling earlier reasoning).[4]

Plaintiffs have plausibly pleaded that the government's separation of families was unconstitutional because it violated the Plaintiffs' Fifth Amendment rights to family integrity. 1AC ¶¶255-58, 296. The Supreme Court has long recognized family integrity to be a core interest protected by the Constitution. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65-66 (2000) (plurality op.) ("[T]he interest of parents in the care, custody, and control of their children [] is perhaps the oldest of the fundamental liberty interests recognized by this Court." (collecting cases)); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (there is "a fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *Quilloin v. Walcott*, 434 U.S. 246 (1978) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 231-33 (1972)).

---

[4] As the Government notes, other unpublished decisions and district court decisions in the Fifth Circuit have allowed for application of the DFE even where constitutional violations were alleged, but that was in cases where the constitutional prohibitions were too vague to provide the request specificity that a particular course of conduct was prohibited. Dkt. 100-1 at 25. As discussed below, the constitutional prohibitions alleged here are sufficiently specific, as courts have repeatedly found under nearly identical circumstances.

Recently, courts have repeatedly affirmed the application of this fundamental right to the separation of immigrant children and parents, granting injunctions ordering their reunification. *See Ms. L. v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1142–44 (S.D. Cal. 2018); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1126 (N.D. Ill. 2018); *Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 499. In *Ms. L.*, the court found that the government's "practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their [substantive] due process claim." 310 F. Supp. 3d at 1145; *see also Ms. L. v. U.S. Immigration & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018). In *W.S.R.*, the court held that "the government's insistence on keeping these boys from their fathers can only be deemed arbitrary and conscience shocking," and accordingly found the plaintiffs were likely to succeed on the merits of their Fifth Amendment substantive due process claims. 318 F. Supp. 3d at 1126. And in *Jacinto-Castanon*, the court "easily conclude[d] that Ms. Jacinto-Castanon and her sons are likely to succeed on at least one of their claims – namely their substantive due process claim that their continued separation . . . violates their right to family integrity under the Fifth Amendment." 319 F. Supp. 3d at 499. So, although the Government claims that "a constitutional violation only removes discretion if it prescribed a specific course of conduct," Dkt. 100-1 at 25, numerous cases have found that the Constitution prohibited nearly the same, specific conduct alleged here. *See also A.F.P.*, 2022 WL 2704570, at *12.

Plaintiffs have also plausibly pleaded that the federal immigration agents' actions violated their constitutional right to equal protection under the law. 1AC ¶¶90-93. As with the fundamental right to family integrity, the constitutional right to equal protection under the law

has long been recognized as "extend[ing] to anyone, citizen or stranger, who is subject to the laws of a State," even those not lawfully present. *Plyler v. Doe*, 457 U.S. 202, 215 (1982).

As alleged in the Amended Complaint, the federal agents' actions here were motivated by discriminatory animus towards Latino immigrants of Central American origin as a means to deter them from pursuing legitimate immigration claims and to deter Central American families from seeking asylum in the United States. Indeed, more than 95 percent of individuals subjected to the same harsh treatment and separation as Plaintiffs were from Central American countries. 1AC ¶¶90-91. Taking these factual allegations as true, the federal agents' actions constitute a clear equal protection violation. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005); *cf. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Finally, Plaintiffs have plausibly pled that DHS agents violated their procedural due process rights by using family separation, threats, and other harsh treatment to pressure and coerce Lucinda into abandoning her immigration claims. 1AC ¶¶93-94. Such actions are straightforward, and specifically prohibited, violations of procedural due process. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1020 (7th Cir. 2000); *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 485 (7th Cir. 2011).

Because the Constitution deprived DHS agents of the discretion to pursue the course of action they did against Plaintiffs, their conduct cannot be deemed to have involved "an element of judgment or choice," and the DFE cannot apply.

## II.     The Due Care Exception Has No Application to the Facts Here

The due care exception to the FTCA ("DCE") bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a *statute or regulation*, whether or not such *statute or regulation* be valid." 28 U.S.C. § 2680(a) (emphasis

added). The government bears the burden to prove this exception applies. *See Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

The Fifth Circuit has not set forth a test for the DCE, but the prevailing test used in other circuits is set forth in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005). *See, e.g.*, *C.M.*, 2020 WL 1698191 at *3; *Ferguson v. United States*, 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016); *Kwai Fun Wong v. Beebe*, 2006 WL 977746, at *7-8 (D. Or. Apr. 10, 2006); *Moher v. United States*, 875 F. Supp. 2d 739, 764 (W.D. Mich. 2012). Applying *Welch*, the government must first show that the "*statute or regulation* in question *specifically pr[e]scribes* a course of action for an officer to follow." *Welch*, 409 F.3d at 652 (emphasis added). In other words, the exception applies only when the official was "executing the *mandates* of" a statute or regulation. *Id.* at 651-52 (emphasis added); *accord Buchanan v. United States*, 915 F.2d 969, 970-71 (5th Cir. 1990); *Gonzalez v. United States*, 2013 WL 942363, at *3-4 (C.D. Cal. Mar. 11, 2013). Second, the government must show that the official "exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 653; *see also Buchanan*, 915 F.2d at 970-71.[5] Here, the government cannot satisfy its burden to establish either prong of the due care exception.

### A.   No Statute or Regulation Mandated the DHS Agents' Cruel Treatment and Separation of Plaintiffs

As an initial matter, the government's cursory argument under the due care exception applies only to Plaintiffs' claims related to the separation itself. The government does not make

---

[5]  The government does not mention the prevailing test set forth in *Welch*. Instead, it cites instead to a 1950s case from the Third Circuit, *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957). Dkt. 73 at 31. Plaintiffs respectfully submit that this Court should look to the modern test set forth in *Welch* and applied by the majority of federal courts. In any event, *Dupree* is not inconsistent with *Welch's* requirement that a government employee must act pursuant to a statutory or regulatory mandate for the DCE to apply. The *Dupree* court held that the DCE applies where the government employees "act *pursuant to and in further of* regulations." *Id.* at 824 (emphasis added).

any arguments asserting that the due care exception applies to the myriad other tortious acts Plaintiffs allege in their complaint. To the extent the government tries to raise such arguments in reply, they are forfeited. *See United States v. Ponce*, 896 F.3d 726, 728 (5th Cir. 2018) (citing *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)).

With regard to the separation, the government fails to satisfy the first prong of the DCE in two ways: it cannot identify (a) any *statute or regulation* that (b) *mandated* the cruel treatment and separation of Plaintiffs upon their entry into the United States.

By the government's own admission, it separated Plaintiffs based on its *policy* of zero tolerance, as set forth in "executive branch directives." Dkt. 100-1 at 5-6. But the DCE does not apply where an executive order setting forth a policy, rather than a statute or regulation, directed the conduct at issue. *See Garcia-Feliciano v. United States*, 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (DCE "would not apply here . . . because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct" (citing *Welch*, 409 F.3d at 652)); *Gonzalez*, 2013 WL 942363, at *3-4 (DCE inapplicable "[b]ecause Plaintiff's detention was not the result of a statutorily prescribed course of action"). The government cites no authority to justify ignoring the plain language of the DCE and expanding it beyond statutes and regulations.

The government's brief makes passing reference to a single statute, 8 U.S.C. § 1232(b)(3), Dkt. 73 at 24, but that statute concerns "efforts to combat the trafficking of children" by ensuring the safe and secure placement of unaccompanied alien children. It plainly does not apply to this case: Plaintiffs D.A. and A.A. were not victims of trafficking, and they were not UACs, as explained above. Put simply, the provision in no way mandated that children like D.A. and A.A. be treated as unaccompanied children, or that they must be forcibly separated from their mother against her will or placed in a shelter rather than with their father.  The

19

government's claim to the contrary is a rejection of the motion to dismiss standard requiring the Court to accept Plaintiffs' well-pleaded facts as true.

The government's position not only defies the motion to dismiss standard, it is wrong on its own terms. The statute it cites could not possibly mandate the separation of Plaintiffs, because if it did the government presently would be violating the law it claims it must follow: after all, the government admits that it voluntarily has ceased separating parents and children. Dkt. 100-1 at 2 The government does not cite a single statute or regulation that makes any reference to separating parents and children (or subjecting them to cruel, harsh and threatening treatment), let alone one that *mandates* such conduct. *See C.M.*, 2020 WL 1698191, at *3 ("The United States cites no statute or regulation mandating the separation"); *A.E.S.E.*, 2022 WL 4289930, at *14 ("The United States has cited no statute or regulation that requires forcible separation and separate detention under the circumstances of this case."); *Watson v. United States*, 179 F. Supp. 3d 251, 270-71 (E.D.N.Y. 2016). In fact, neither the general statutes the government cites nor any others could mandate family separations because if they did, then the government presently would be violating the law it claims it must follow, having abandoned the "human tragedy" of family separations (as it has characterized it in prior briefing).[6]  The government's request to apply the due care exception to shield DHS agents' decision to separate Plaintiffs is meritless and should be rejected.[7]

---

[6]  Any notion that separation was mandated by statute or regulation is also inconsistent with DHS's authority to release on parole an individual subject to expedited removal. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 235.3(b)(2)(iii), (b)(4)(ii).

[7]  The government erroneously claims that the DCE applies where "a government employee's actions are authorized by statute or regulation." Dkt. 100-1 at 29. No court has ever interpreted the DCE to bar FTCA claims whenever officials' conduct was merely "*authorized*" by statute or regulation, and the government cites none. To the contrary, under *Welch*, courts of appeals and district courts have consistently held that the DCE applies only where a statute or regulation "mandated"—*i.e.*, "specifically prescribed"—the conduct at issue. *See Welch*, 409 F.3d at 652; *Buchanan*, 915 F.2d at 970-71; *Gonzalez*, 2013 WL

**B.      The Government Fails to Establish that DHS Agents Exercised "Due Care"**

Even if a statute or regulation mandated the separations (and none did), the DCE would not bar Plaintiffs' claims because the government failed to exercise "due care" in "following the dictates of" such a mandate. *Welch*, 409 F.3d at 652. In considering whether federal officers acted with due care, "[t]he relevant question is one of reasonableness." *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987); *see also Hatahley v. United States,* 351 U.S. 173, 181 (1956) ("'Due care' implies at least some minimal concern for the rights of others."). Despite having the burden of proving the DCE applies, the government does not even address whether the DHS agents here exercised due care. The argument is forfeited, and on that basis alone the Court should reject the government's reliance on the DCE.

Moreover, accepting Plaintiffs' well-pleaded allegations, the government could not meet its burden: the actions of DHS agents in separating Plaintiffs reflects an inherent lack of due care. Plaintiffs allege that the DHS agents here deliberately traumatized them, insulted them, denied them access to food and water, kept them in torturous conditions, separated them without warning or explanation, denied them access to information or communication, threatened Lucinda to coerce her into giving up her family's asylum claims, placed her in danger while transporting her, denied her access to medical care for injuries suffered because of their misconduct, and deliberately delayed releasing the children to their anxiously awaiting father. 1AC ¶¶19-30, 47-60, 71-72, 80-85, 94. These are not things a "reasonable law enforcement

---

942363, at *3-4; *see also A.F.P.*, 2022 WL 2704570, at *15 (family separation case). Here, not only did no statute or regulation mandate Plaintiffs' separation or the various other forms of tortious conduct to which they were treated, no statute or regulation even so much as authorized DHS agents to separate Plaintiffs and subject them to harsh treatment without any articulable concerns about parental fitness or safety. To the contrary, *Flores*, agency directives, and the Constitution all prohibited such actions. *See supra* at II.B.

agency [would] have done under [any] circumstances[.]" *Hydrogen Tech. Corp.*, 831 F.2d at 1161.

Accepting Plaintiffs' allegations and all reasonable inferences, the DHS agents did not act reasonably or show a minimal degree of concern for Plaintiffs. And any factual disputes about these allegations are for discovery. At the motion to dismiss stage, the government has failed to prove the DCE should apply. *See, e.g., A.F.P.*, 2022 WL 2704570, at *15 (in family separation case with nearly identical allegations of harsh treatment, concluding such "factual allegations do not support a finding that due care was actually taken, as required for the due care exception to apply"); *C.M.*, 2020 WL 1698191, at *4 (rejecting DCE, stating that "discussion of the extent to which certain facts could or could not prove a claim . . . would be premature"); *Moher*, 875 F. Supp. 2d at 764.

## III.   Plaintiffs' Claims Satisfy the Private Analog Inquiry

The government next contends that Plaintiffs' claims should be dismissed because there is no private person analog, and their claims are thus not authorized by the FTCA. Dkt. 73 at 33 (citing 28 U.S.C. § 2674). Notably, the government does not directly address any of the common law torts Plaintiffs allege. Instead, it again broadly characterizes all of Plaintiffs' claims as relating to "the authority to enforce federal criminal and immigration laws and make determinations concerning detention[.]" Dkt. 73 at 33. The Court should reject this argument: it urges a result rejected by the Supreme Court and misconstrues Plaintiffs' Amended Complaint.

The Supreme Court has made clear that the private analog doctrine, which provides that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, must be interpreted broadly. *See Indian Towing Co. v. United States*, 350 U.S. 61, 68-69 (1955). The FTCA's requirement that a claim address "*like* circumstances" does not mean "under the *same* circumstances," *id.* at 64 (emphasis added),

22

and the private analogy "should be applied broadly so as to achieve the intended purpose of putting the federal government on equal footing with private entities." *Owen v. United States*, 935 F.2d 734, 737 (5th Cir. 1991); *see also United States v. Olson*, 546 U.S. 43, 46 (2005) (words "like circumstances" in § 2674 do "not restrict the court's inquiry to the *same circumstances* but require it to look further afield."); *Mayorov*, 84 F. Supp. 3d at 698.

### A. Private Analog Inquiry Does Not Bar FTCA Claims That Arise in Immigration Context

The government argues that there is no private analog because it exclusively has the ability to "enforce federal criminal and immigration laws," Dkt. 100-1 at 31, but the Supreme Court has repeatedly held that the United States can be liable for activities over which the federal government has exclusive authority. *Olson*, 546 U.S. at 47 (claims against federal mine inspectors likely have private analog despite fact that United States exclusively performs inspections of state mining sites); *United States v. Muniz*, 374 U.S. 150, 159-62, 165-66 (1963) (FTCA claim available for negligence by federal prison officials despite fact that imprisonment is an exclusive government function); *Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007) ("Even if the conduct entails uniquely governmental functions, the court is to examine the liability of private persons in analogous situations."). In *Indian Towing*, for example, the Supreme Court found a private analog in a claim against the U.S. Coast Guard, which was singularly responsible for operation of lighthouses in the coastal United States, for negligently checking the operations of various parts of a lighthouse and failing to give warning that the light was inoperable. 350 U.S. at 62. The Supreme Court held that this claim was "analogous to allegations of negligence by a private person 'who undertakes to warn the public of danger and thereby induces reliance.'" *Olson*, 546 U.S. at 47 (quoting *Indian Towing*, 350 U.S. at 64-65).

For these reasons, courts have allowed FTCA claims to proceed despite the uniquely governmental nature of immigration enforcement. In *Mayorov*, for example, the court permitted FTCA claims based on negligence (also alleged here), to go forward against federal immigration agents for their improper issuance of an immigration detainer. 84 F. Supp. 3d 678; *see also Xue Lu v. Powell*, 621 F.3d 944, 947-50 (9th Cir. 2010) (rejecting the government's private analog defense and allowing the plaintiffs' IIED claim where an asylum officer conditioned outcomes in the plaintiffs' immigration proceedings on satisfaction of demands for money and sexual favors); *Liranzo v. United States*, 690 F.3d 78, 80-81, 94-95 (2d Cir. 2012) (finding private analog in state tort law allowing claims against private individuals for detention without "legal privilege to do so" in immigration detention context); *C.M.*, 2020 WL 1698191, at *4 (permitting FTCA claims to go forward on nearly identical facts about DHS agents' actions in separating immigrant parents and children); *Avalos-Palma v. United States*, 2014 WL 3524758, at *12 (D.N.J. July 16, 2014) (private analog doctrine did not bar claims arising from wrongful deportation). The government cites no caselaw that reaches the holding it necessarily seeks: that immigration officers are inherently immune from suit under the FTCA because there is no private analog in the immigration enforcement context. And taken to its logical conclusion, the government's reasoning would bar FTCA claims in nearly every aspect of law enforcement, from federal prison officers to FBI agents, because of the uniquely governmental nature of their work. This would be a monumental re-writing of the FTCA and existing caselaw. Not surprisingly, then, every court to consider the government's private analog argument in the family separation context has rejected it. *See, e.g.*, *E.C.B.*, attached as Exhibit 1, at 5-6; *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *5 (D. Ariz. Sept. 30, 2022); *A.E.S.E.*, 2022 WL 4289930, at *14-15; *A.F.P.,* 2022 WL 2704570, at *9-10.

## B. Texas Law Has Held Private Persons Liable Under Analogous Circumstances

In this case, Plaintiffs seek recovery for the physical, mental, and emotional damages they suffered as a result of DHS agents' deliberately malicious and cruel treatment, including subjecting them to insults, taunts and threats, removing D.A. and A.A. from their mother's care in Texas without explanation or warning, denying them any communication with one another, and denying Lucinda medical care for injuries DHS agents caused. Texas courts have held private persons liable in tort under analogous circumstances.[8]

In *Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986), the Texas Supreme Court recognized that a parent has a cause of action in tort when "someone entices away or harbors his minor child." *See also id.* at 293 (formally adopting Restatement (Second) of Torts, § 700 (1977)); *Smith v. Smith*, 720 S.W.2d 586, 600 (Tex. Civ. App.—Houston 1986) (recognizing a Texas statute that permits suit against an individual who takes possession of a child or conceals the child's whereabouts, Tex. Fam. Code § 42.002, and finding that the statute does not displace or diminish other available common law causes of action); *Weirich v. Weirich*, 796 S.W.2d 513, 515 n.3 (Tex. Civ. App.—San Antonio 1990), *rev'd on other grounds* 833 S.W.2d 942 (Tex. 1992) (same).

Texas courts have also long recognized a cause of action for assault and battery against a private individual who engages in reckless behavior, like the reckless operation of the vehicle that caused Lucinda's injuries. *Brown v. State*, 91 S.W.3d 353, 357-58 (Tex. Civ. App.—Eastland 2002) (affirming defendant's conviction for assault based on his reckless operation of a

---

[8] "FTCA claims are governed by the substantive law of the state where the alleged tort occurred." *Kaniff v. United States*, 351 F.3d 780, 790 (7th Cir. 2003). In this case, Plaintiffs' claims arise out of misconduct that occurred in Texas and Illinois. *See generally* 1AC.

utility truck that injured a third party);[9] *see also Carcamo-Lopez v. Does 1 Through 20*, 865 F. Supp. 2d 736, 761-62 (W.D. Tex. 2011) (recognizing the availability of an FTCA claim for assault and battery based on the reckless operation of a vehicle). Similarly, there can be no dispute about the availability of a cause of action for the failure by private individuals to provide access to medical care when they are in a position of control. *See, e.g.*, *Texas Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 34-36 (Tex. 2002) (private company that operated a home for intellectually disabled individuals had "right to control" its residents, giving rise to a duty to supervise them); *St. Paul Med. Ctr. v. Cecil*, 842 S.W.2d 808, 813 (Tex. Civ. App.—Dallas 1992) (hospital negligent for failing to provide patients access to staff who were qualified to perform required medical tasks).

Plaintiffs' claims for negligent supervision and breach of fiduciary duty are also analogous to claims recognized by courts in Texas and Illinois. *See, e.g., THI of Texas at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 573 (Tex. Civ. App.—Amarillo 2010) (negligent supervision tort imposes liability if employer had a duty to supervise competent employees, breached that duty, and thereby proximately caused the plaintiffs' injuries); *see also Holcombe v. United States*, 388 F. Supp. 3d 777, 807 (W.D. Tex. 2019) (recognizing the existence of a negligent supervision claim under the FTCA); *see also Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) (to establish a breach of fiduciary duty under Texas law, the plaintiff must prove the existence of a fiduciary relationship that was breached and caused injury to the plaintiff) (citing *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. Civ. App.—Dallas 2010))); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002) (fiduciary duty "applies to any person who occupies a position of peculiar confidence towards another");

---

[9] In Texas, "[t]he elements for a cause of action for assault and battery are the same in civil and criminal suits." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.4 (Tex. 2010).

*S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996) (recognizing fiduciary relationship between parent and minor); *Parks v. Kownacki*, 737 N.E.2d 287, 291 (Ill. 2000) (once individual "accepted the responsibility of plaintiff's care and education, he took on the role of guardian, even though he was not given that title by a court").

The government largely ignores the state law causes of action that subject private individuals to liability for the same misconduct alleged in Plaintiffs' Amended Complaint. Its argument is therefore forfeited. *See Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017) (noting that a party forfeits an argument by failing to adequately brief it). The government instead repeats its refrain about its general authority to enforce the immigration laws, but that argument is inapplicable to the analysis that this Court is required to undertake in assessing whether there is a private analog under Texas law to Plaintiffs' common law theories under the FTCA. *See Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir. 1984) (in undertaking private analog inquiry, courts should "focus on the behavior involved, not the legal labels applied, and then look for analogies to private conduct").[10]

In its brief, the government cites *Liranzo*, but in that case, the Second Circuit confirmed the critical point that FTCA claims regarding misconduct by immigration officers may proceed even though immigration, and the actions of immigration officials, are uniquely governmental. 690 F.3d at 94-95; *see also supra* at 19.[11] Because Texas law satisfies the broad private analog

---

[10] The government also cites *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016), but in *McGowan*, the Second Circuit undertook the necessary inquiry into the causes of actions available under state law and found nothing analogous. *Id.* at 126 ("[Plaintiff] cites no authority for the proposition that private contractors can be held liable for wrongful confinement under New York law."). And that case concerned a claim for prisoners subjected to punitive segregation, irrelevant here. *Id.*

[11] The government also cites *Ryan v. U.S. Immigration & Customs Enforcement*, 974 F.3d 9, 26 (1st Cir. 2020), in support of its argument, but that case has no applicability here as it dealt only with the question of whether federal law prohibited ICE from making arrests because of a federal common-law privilege. Most of the other cases the government cites are similarly irrelevant because they also involve quasi-

inquiry required by the FTCA, as interpreted by the Supreme Court and numerous other courts, the government's motion to dismiss on this basis should be denied.

## IV. Plaintiffs State Claims For Relief Under Texas Law

### A. Plaintiffs State a Claim for Intentional Infliction of Emotional Distress under Texas Law

As an initial matter, the government did not move to dismiss Plaintiffs' claims for breach of fiduciary duty, negligence, negligent supervision, loss of consortium, or assault and battery for failure to state a claim. *See* 1AC at Counts II, IV, VI, VIII, X, and XII. Each of those counts, as unchallenged, must proceed to discovery. *See Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 (5th Cir. 1993) ("If the party omits [a Rule 12(b)] defense or objection, Rule 12(g) precludes him from making a further motion seeking dismissal based on the omitted defense or objection.").

The government has moved to dismiss Plaintiffs' intentional infliction of emotional distress claim. But its challenge to this claim is exceptionally narrow: tacitly conceding the obvious, the government does not challenge that the complaint's allegations satisfy each of the elements of IIED.[12]  Instead, it asserts what amounts to a technical, affirmative defense: conduct

---

adjudicative actions, which—unlike the misconduct in this case—private persons cannot engage in. *See Bhuiyan v. United States*, 2017 WL 2837023, at *4 (N.M.I. June 30, 2017); *Elgamal v. United States*, 2015 WL 13648070, at *2 (D. Ariz. July 8, 2015); *Appleton v. United States*, 180 F. Supp. 2d 177, 185 (D.D.C. 2002). The court in *Mazur v. United States*, 957 F. Supp. 1041, 1043 (N.D. Ill. 1997), declined to address the private analog argument because it found the plaintiff's action to be time-barred. And the remaining cases, Dkt. 73 at 25-26, merely stand for the uncontroversial proposition that the FTCA does not apply to action based solely on the government's violation of federal regulations. *See Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537-38 (1st Cir. 1997) (conduct at issue "wholly concern[ed] the [FAA's] alleged failure to perform its regulatory functions" under federal statutes); *Chen v. United States*, 854 F.2d 622, 626-27 (2d Cir. 1988) (dismissing FTCA claim predicated on government's failure to abide by its own procurement regulations).

[12] In Texas, the elements of an IIED claim are: "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

that is in fact extreme and outrageous for purposes of IIED nevertheless cannot be considered extreme and outrageous to satisfy the elements of IIED if it is an act of enforcing the law, be it criminal or immigration law.  Dkt. 105 at 33–35.

Plaintiffs take no issue with that proposition.  The government's attempt to apply it to this case, however, suffers from a basic flaw:  while the government emphasizes that its employees were involved in enforcement of the law as a general matter, it never specifies what alleged acts by those employees would actually be covered by its proposed affirmative defense.  Notably, Plaintiffs have not sued because Lucinda was prosecuted for a misdemeanor, or because the government applied immigration law to Lucinda and her children once they entered the United States.  What Plaintiffs allege is that government employees engaged in various abusive and outrageous acts that, while concurrent with the enforcement of the law, had little connection to the enforcement of the law and instead were done for the purpose of terrorizing a mother and her two children.

The First Amended Complaint describes multiple instances of extreme and outrageous conduct in detail, and as Plaintiffs have explained throughout this memorandum, these acts were not incidental to the enforcement of *any* law.  To the contrary, the acts amounted either to gratuitous cruelty by agents mistreating the family as they imprisoned and separated them; recklessness with respect to the Plaintiffs' physical safety and emotional wellbeing, or outright violation of federal mandates, like the *Flores* consent decree, that governs the manner in which immigration law is to be enforced.  *See supra* §§ I(A); I(B)(1)-(3).

For example, DHS agents told Lucinda that the government would take her children away. 1AC ¶22.  Then they unlawfully separated Lucinda from her five-year-old and fourteen-year-old. 1AC ¶23. Purposefully preventing a mother from the chance to say goodbye to her two children,

the government agents took Lucinda away in handcuffs while her children screamed and cried for their mother through plexiglass.  1AC ¶23.  The agents used Lucinda's isolation to torment and traumatize her and threatened that they would take her children away if she did not drop her asylum claims and plead guilty to a misdemeanor.  1AC ¶¶25–26.  Federal agents then caused Lucinda severe injury by shackling and handcuffing her in a van and causing her to slam headfirst into the van's metal bars. 1AC ¶55.  They denied her access to medical care for her injuries, despite doctors' orders to return her to the hospital if she did not improve.  1AC ¶58.

Federal agents intentionally inflicted emotional distress on D.D. and A.D. by tearing them away from their mother without allowing them to say goodbye, denying them any phone contact with her, and refusing to reunite them with their father. 1AC ¶30.  And Plaintiffs allege that there was no basis for keeping D.D. and A.D. from their parents other than to terrify and isolate them. 1AC ¶¶29–30.  The government's brief does not discuss these alleged acts, much less explain how any them were constitutive of its enforcement of criminal or immigration.  And indeed, none of these acts concern or even proximately arose from the enforcement of those laws.  The employees' conduct *was* extreme and outrageous.  Plaintiffs have stated an IIED claim.

### B.  Plaintiffs State a Claim for Abuse of Process under Texas Law

The government also argues that Plaintiffs have not stated a claim for abuse of process because they did not allege that the federal agents (1) improperly used any process or (2) coerced and extorted Plaintiffs.  Dkt. 105 at 36–37.  Plaintiffs, however, have alleged both these things.

Plaintiffs allege that the federal agents coerced and extorted them, and abused the immigration and criminal process to traumatize Lucinda, D.A., and A.A.  1AC ¶¶6, 7, 23–30, 51–60, 144.  Federal agents separated Lucinda from her children in violation of their obligations under immigration law. *Id.* ¶¶23, 67–75, 144. They further abused the immigration process by denying Lucinda and her children any phone calls or other contact. *Id.* ¶¶6, 28, 36–37, 156.  And

they abused the immigration and criminal process by using it as a threat to Lucinda, pressuring her to abandon her immigration claim and plead guilty to a misdemeanor or risk losing her children. *Id.* ¶26. D.A. and A.A. also suffered as a result of the federal agents' abuse of process. The federal agents separated D.A. and A.A. from their mother without allowing them any comfort or goodbye, kept them separated from their father when there was no need to do so, ignored their post-traumatic stress, and abused the immigration process to traumatize them. *Id.* ¶¶ 30, 45, 67, 145.

These factual allegations support an abuse of process claim. Once again, Plaintiffs have not challenged the application of criminal law to Lucinda, or the application of immigration law to all three Plaintiffs. That is not the point of their claim. It is, rather, that government employees used the existence of legal proceedings to extort and traumatize Plaintiffs. Furthermore, the government's claim that government employees' abuse of the process did not result in Lucinda signing certain papers, *see* Dkt. 105 at 37–38, is a non-sequitur. The point of Plaintiff's claim is that the government used the existence of the process to inflict emotional pain on Lucinda and her children—both by threatening and emotionally abusing Lucinda, *see* 1AC ¶¶23–26, 52–60, and by unnecessarily separating D.A. and A.A. from both their parents. *See* 1AC ¶¶23–30. As even the government's brief acknowledges, Dkt. 105 at 36–37, conduct of that sort gives rise to an abuse of process claim.

### C. Plaintiffs State a Claim for Medical Negligence under Texas Law

The government argues that Plaintiffs did not assert a claim for medical negligence because the federal agents were not medical providers. Dkt. 105 at 39. But non-medical providers may be liable for medical negligence where, as here, they fail to provide individuals in their control access to medical care. *See, e.g.*, *Texas Home Mgmt., Inc.*, 89 S.W.3d at 34–36 (private company that operated a home for intellectually disabled individuals had "right to

control" its residents, giving rise to a duty to supervise them); *St. Paul Med. Ctr.*, 842 S.W.2d at 813 (hospital negligent for failing to provide patients access to staff who were qualified to perform required medical tasks).

As alleged in the First Amended Complaint, the hospital doctors released Lucinda to the federal agents' care and instructed them that they should bring her to the hospital if she did not improve.  1AC ¶¶8, 58.  The federal agents ignored the doctors' advice.  1AC ¶¶8, 58.  Lucinda suffered swelling, difficulty eating, vision problems, and trouble navigating while under the agents' care, but they did not take her to the hospital as the doctors advised, and instead gave her ibuprofen.  1AC ¶58.

The federal agents were also negligent for failing to provide D.A. and A.A. medical care for their post-traumatic stress.  1AC ¶7.  The federal agents instead exacerbated D.A. and A.A.'s condition by taking their mother away without allowing a goodbye while they screamed and cried for their mother through plexiglass.  1AC ¶23.  Not only did federal agents separate D.A. and A.A. from their mother, but they refused to release D.A. and A.A. to their father and delayed the family's reunification.  1AC ¶¶ 30, 46.  Plaintiffs have stated claims for intentional infliction of emotional distress, abuse of power, and medical negligence and the court should deny the government's motion to dismiss.

## CONCLUSION

The government's arguments throughout its brief, taken to their logical conclusion, seek broad immunity from the FTCA for immigration agents. In nearly every section of its brief, the government relies on the general (and undisputed) authority of the United States to enforce immigration laws as the centerpiece of its argument, without ever engaging with Plaintiffs' actual claims about the treatment to which DHS agents actually subjected them. The natural

consequence of the government's argument is that there is no limitation on the level of cruelty or harm that DHS agents could inflict on immigrant detainees because they are acting within the realm of immigration. And so, the discretionary function exception always applies, even without identifying any actual delegation of discretion and regardless of limitations placed by federal law. And so, the due care exception applies, even without identifying any statute or regulation mandating their conduct and regardless of whether they acted recklessly instead of with due care. And so, there is no private analog, even without addressing any of the state-law theories on which Plaintiffs' claims are based. The government's argument is repugnant. Congress did not create a carveout in the FTCA for immigration officers, or immigration in general; and the government cites no legal authority creating or even implying such a carveout, and as set forth above numerous cases reject the government's untenable position.

The government has not met its burden to establish the applicability of the FTCA exceptions it seeks to apply here to bar Plaintiffs' FTCA claims. Its motion to dismiss should be denied.

Respectfully submitted,

/s/ Anand Swaminathan
Counsel for Plaintiffs


Joe A. Spencer
Joe A. Spencer Attorney & Counselor at Law
1009 Montana Ave
El Paso, TX 79902
(915) 532-5562
Joe@joespencerlaw.com

Anand Swaminathan*
Stephen Weil*
LOEVY & LOEVY

33

311 North Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

Zachary Manfredi*
Ming Tanigawa-Lau*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S. #84810
New York, NY 10003
(305) 484-9260
*Admitted pro hac vice

## <u>CERTIFICATE OF SERVICE</u>

I, Anand Swaminathan, an attorney, hereby certify that I caused a copy of the foregoing to be filed on December 9, 2022, electronically via CM/ECF, which effected service on all counsel of record.


/s/ Anand Swaminathan
Counsel for Plaintiffs