UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| D.A., A.A., and LUCINDA DEL CARMEN PADILLA GONZALES,<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br>EP-22-CV-00295-FM |

**REPLY IN SUPPORT OF UNITED STATES'**
**SECOND AMENDED RENEWED MOTION TO DISMISS**

For the reasons stated in the government's Second Amended Renewed Motion to Dismiss (United States' Motion), fully incorporated here, the United States has not waived its sovereign immunity and agreed to subject itself to suit for monetary damages for claims such as those Plaintiffs bring here, which allege constitutional violations by government officials engaged in discretionary decision-making authorized by federal law. Congress did not contemplate any such action under the Federal Tort Claims Act (FTCA), and this case should therefore be dismissed for lack of subject matter jurisdiction.

Additionally, Plaintiffs have failed to state a claim upon which relief may be granted for intentional infliction of emotional distress, abuse of process, and medical negligence under Texas law. Accordingly, to the extent the Court exercises jurisdiction over Plaintiffs' claims, their allegations of intentional infliction of emotional distress, abuse of process, and medical negligence should be dismissed for failure to state a claim.

**I.      Plaintiffs' Claims are Barred by the Discretionary Function Exception.**

In the United States' Motion, the United Sates demonstrated that the Court lacks subject matter jurisdiction over this case because Plaintiffs' claims are barred by the discretionary

function exception (DFE) to the FTCA, 28 U.S.C. § 2860(a). In their Response in opposition to this Motion, Plaintiffs have not offered a persuasive counterargument.

Plaintiff Padilla-Gonzales brings this action against the United States on her own behalf and on behalf of two of her children, D.A. and A.A., under the FTCA. They seek monetary damages for alleged injuries caused by Defendant's alleged implementation of a policy to refer for prosecution all individuals suspected of illegally entering the United States at the United States-Mexico border, including parents traveling with children (the "Zero Tolerance Policy") and the alleged conditions of confinement and treatment of Plaintiffs after they were separated. Plaintiffs do not dispute that the DFE bars "[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Instead, Plaintiffs misstate the applicable standard and argue, contrary to their own allegations and well-settled law, that the government actions at issue were not discretionary.

While Plaintiffs assert in cursory fashion that the Department of Homeland Security (DHS) agents violated "regulations and other government directives" (ECF No. 118, p. 13[1]), the law is clear that the DFE applies unless the government violated a legal directive that is both *mandatory* and *specific*. Plaintiffs must show that "a 'federal statute, regulation or policy *specifically prescribes* a course of action for an employee to follow,'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (emphasis added), by providing a "*precise and optionless* directive," *Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996) (emphasis added) (citing *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Plaintiffs have not shown this here.

---

[1] Citations to ECF documents refer to the court-stamped page numbers in the top header.

Likewise, under the second prong of the DFE, "[t]he relevant inquiry is merely whether the conduct at issue is '*susceptible to* policy analysis.'" *Maas,* 94 F.3d at 298 (emphasis added). This standard is an objective one; "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken." *Gaubert*, 499 U.S. at 325. Thus, asserting, as Plaintiffs have, that government agents acted in a "cruel fashion" or had some other subjective intent does not alter this prong of the analysis.

Applying these principles here, it is clear that the DFE applies to both aspects of Plaintiffs' claims—those stemming from the Zero Tolerance Policy and implementation thereof, as well as those stemming from the alleged conditions of confinement and alleged treatment of Plaintiffs.

> **A.    The discretionary function exception bars claims arising out of the Zero Tolerance Policy**.

Plaintiffs do not dispute that the Government has "'broad discretion' to enforce the Nation's criminal laws", *United States v. Armstrong*, 517 U.S. 456, 464 (1996), including by apprehension of noncitizens for unlawful entry and referral for criminal prosecution. Nor do they dispute that "Congress has placed the responsibility of determining where [noncitizens] are detained *within the discretion* of the [Secretary]." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added) *amended,* 807 F.2d 769 (9th Cir. 1986). Indeed, "[d]iscretion lies at the heart of the DHS law enforcement function." *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020). In exercising this function, DHS agents must "make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability." *Id*. Moreover because (among other things) immigration policy involves "vital national interests in law enforcement at the borders" … "DHS officers' decisions

in investigating and responding to potential violations of immigration law are infused with public policy considerations." *Id*. at 217.

Accordingly, as other courts have recognized, the "Zero Tolerance Policy" that was in place when Plaintiff Padilla-Gonzales was prosecuted was not only susceptible to policy analysis, but "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. U.S. Immigr. & Customs Enf't,* 18-1445, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019). It is "an 'administrative decision[] grounded in social, economic, and political policy' that this Court is without jurisdiction to second-guess." *Pena Arita v. United States,* 470 F. Supp. 3d 663, 687 (S.D. Tex. 2020). That conclusion is dispositive here.

Nonetheless, Plaintiffs attempt to avoid dismissal by raising a swath of allegations regarding the actions of the "individual DHS agents" in "implementing" the separation. ECF No. 118, p. 14. As a threshold matter, Plaintiffs' attempt to recharacterize their allegations ignores the numerous statements in the Amended Complaint making clear that the gravamen of Plaintiffs' claim is a challenge to high-level government policies resulting in family separation. In focusing on implementation of the alleged family separation policy, Plaintiffs seek to create a false dichotomy between the policy itself and its "implementation" in the field—a distinction that the Supreme Court rejected in *Gaubert. See,* 499 U.S. at 324-25; *Bergquist v. U.S. Nat. Weather Serv.,* 849 F. Supp. 1221, 1226 (N.D. Ill. 1994); *see also Sloan v. U.S. Dep't of Hous. & Urb. Dev.,* 236 F. 3d 756, 762 (D.C. Cir. 2001) (claims "inextricably linked" to conduct protected by § 2680(a) are also barred). As the court observed in addressing similar allegations about an alleged family separation policy in *Pena Arita*, the family "separation policy itself and

its implementation by officers in the field are discretionary," and thus "such claims are foreclosed by the discretionary function exception." 470 F. Supp. 3d at 686.

In fact, the very cases Plaintiffs cite make clear that "[w]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Palay v. United States*, 349 F.3d 418, 428 (7th Cir. 2003) (quoting *Gaubert,* 499 U.S. at 324). The government actor need not "belong to the policymaking or planning ranks of the government in order for the exception to apply." *Palay,* 349 F.3d at 428. Likewise, "applicability of the exception depends not on the intent of the government actor 'but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Id*.

### 1. *Flores* does not prohibit separation.

Plaintiffs attempt to argue that the *Flores* Agreement prohibits family separation. However, as the government observed in its motion (ECF No. 105, pp. 4-5), the courts responsible for implementing that order have made clear that it does not. The Ninth Circuit has observed that the *Flores* consent decree "*does not address* … the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "*does not contemplate* releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores v. Lynch*, 828 F.3d 898, 906 (9th Cir. 2016) (emphasis added); *see also United States v. Dominguez-Portillo*, 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018), *aff'd sub nom. United States v. Vasquez-Hernandez,* 314 F. Supp. 3d 744 (W.D. Tex. 2018), *aff'd,* 924 F.3d 164 (5th Cir. 2019) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").

5

Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *Bunikyte, ex rel. Bunikiene v. Chertoff,* A-07-CA-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). While the *Flores* Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores,* 828 F.3d at 908. Accordingly, *Flores* does nothing to change the statutes requiring minors to be transferred to the Department of Health and Human Services' Office of Refugee and Resettlement (ORR) custody and placed in the "least restrictive" facility when their parents are detained by immigration authorities. Indeed, under Federal law and the *Flores* Agreement, such children cannot be detained in adult detention facilities.

Likewise, nothing in *Flores* would authorize the government to circumvent the statutory procedures governing release of children from ORR custody. The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) prescribes a process the agency must follow before it can release a child from ORR custody. 8 U.S.C. § 1232. The TVPRA states that a child may be placed with a proposed custodian only after ORR "makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). Among other things, ORR must "verify" the information and make its own "independent finding" after investigating the custodian's past activities: "Such determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.*

### B. The discretionary function exception bars claims stemming from Plaintiffs' conditions of confinement.

Plaintiffs' allegations relating to their treatment during their custody are also barred by the DFE. These allegations involve precisely the sort of discretionary actions with respect to detainees' conditions of confinement that courts have repeatedly held are not actionable under the FTCA. As the cases cited at pages 21-22 of the United States' Motion make clear, courts have rejected similar claims regarding the type of medical care detainees receive (*Patel*), the sort of items to which individuals have access to while in detention (*Bultema*), detainees' opportunities for communication while in detention (*Harrison*), the sort of computer systems and databases the government uses (*Campos*), and general conditions such as temperature and crowding (*Antonelli* and *Lineberry*). *See* ECF No. 105, pp. 21-22.

Thus, for example, in another family separation case that Plaintiffs fail to address at all (*Pena Arita*), the court held that the DFE barred claims based on allegations that government agents violated a "nondiscretionary duty to provide medical care" and detained a noncitizen without "adequate safeguards" leading to his suicide. *Pena Arita*, 470 F. Supp. 3d at 687-88. As the court observed, decisions regarding conditions of confinement such as medical care and detainee transfers are the sort of decision-making that is "grounded in social, economic, and political policy" that the court was "without jurisdiction to second-guess." *Id*. at 687 (quoting *Gaubert*, 499 U.S. at 323).

The materials Plaintiffs incorporated in their own complaint, such as CBP manuals, further confirm that such decisions regarding conditions of confinement are discretionary, as they indicate that government agents must consider, under the circumstances, what measures are "reasonable," "acceptable", and "proper[]." *See* ECF No. 105, p. 22 at n.7. Such provisions do

not set out mandatory and specific steps that agents must always follow, and thus do not eliminate officials' discretion with respect to these decisions.

Finally, Plaintiffs ignore the judgment of courts rejecting similar "attack[s] on general conditions, practices, rules, or restrictions of pretrial confinement"—in the context of family separation or otherwise. *See Aguilar v. United States*, 1:16-048, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017). These claims are essentially "constitutional torts" claims and "the United States is not 'vicariously liable for constitutional torts of its officials' since the United States has not waived sovereign immunity from such actions." *See id.*

### C. Plaintiffs' assertion of unconstitutional conduct does not preclude application of the discretionary function exception.

Plaintiffs' allegations of unconstitutional conduct do not alter the discretionary function analysis. As Defendant notes in its motion, "Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees." ECF No. 105, p. 23, citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). Plaintiffs never attempt to reconcile their arguments with the Supreme Court's decision in *Meyer*, which recognized that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim." *Meyer,* 510 U.S. at 478.

Plaintiffs argue that the caselaw in the Fifth Circuit as to whether constitutional violations may invalidate the DFE is "admittedly murkier" and cite to dicta from the Fifth Circuit panel in *Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987) to argue that the DFE is invalidated by alleged constitutional violations. ECF No. 118, p. 23. However, they gloss over the Fifth Circuit's subsequent en banc ruling in *Castro v. United States,* reinstating a district court's decision rejecting this position. 608 F.3d 266 (5th Cir. 2010). Plaintiffs also fail to mention that this same argument was recently rejected by a district court in the Fifth Circuit in another family separation case, where the court held that the exception barred plaintiff's claims. *Pena Arita*, 470 F. Supp. 3d at 687-88. Thus, as explained, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct, but only by a showing that the government official's

8

discretion was limited by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. ECF No. 105, pp. 23-24.

In a footnote, Plaintiffs recognize that other unpublished opinions and district court decisions in the Fifth Circuit have allowed for application of the DFE even where constitutional violations were alleged. ECF No. 118, p. 23 at n.4. However, Plaintiffs argue that those cases involved constitutional prohibitions that were too vague to provide the requisite specificity that a particular course of conduct was prohibited. *Id.* Plaintiffs' arguments fail because the same is true here—none of the constitutional provisions that they cite specify a clear course of conduct that would preclude the application of the DFE. Plaintiffs have identified nothing in the decisions of the Supreme Court or the Fifth Circuit that removed any official's discretion with respect to any of the categories of asserted actions by "specifically prescrib[ing] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322. Accordingly, neither the Due Process Clause nor the Equal Protection Clause provide a specific directive that prescribes how government officials must manage the particular context of separately housing parents and children apprehended after entering the United States when the parents are prosecuted or held in secure detention.

Further, the decisions cited by Plaintiffs regarding the right to family integrity in the context of separation of parents and their children all post-date the Plaintiffs' separation in May 2018. Additionally, they were decided by district courts and are therefore irrelevant to the analysis of whether the rights at issue were "clearly established." For example, the district court in the *Ms. L.* litigation did not issue its preliminary injunction until June 26, 2018,[2] only three days before D.A. and A.A. were reunited with their father. *See* ECF No. 35, p. 13, ¶ 46 (indicating the children were reunited with their father on June 29, 2018). Additionally, they were decided by district courts and therefore do not demonstrate that a right is "clearly established." *See Camreta v. Greene,* 563 U.S. 692, 709 at n.7 (2011); *see also* ECF No. 105, p. 26.

---

[2] *See Ms. L. v. U.S. Immigr. & Customs Enf't,* 310 F. Supp. 3d 1133 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019), and *enforcement in part, denied in part sub nom. Ms. L. v. U.S. Immigr. & Customs Enf't,* 415 F. Supp. 3d 980 (S.D. Cal. 2020).

Finally, although Plaintiffs insist that no court has accepted the government's position regarding the DFE, they fail to address a decision that only reluctantly held that the DFE did not apply because the court was constrained by Ninth Circuit precedent:

> The Court recognizes and follows, **but disagrees with**, the standard in *Nurse*. Ninth Circuit caselaw burdens the Government—as the defendant—with establishing the validity of the discretionary function exception. Yet, plaintiffs are permitted to effectively eliminate that exception by alleging constitutional violations. The FTCA and its exceptions represent Congress's express waiver of sovereign immunity. Allegations of constitutional violations should not erase the statutory exceptions authored by and for the sovereign itself. *See Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019) ("[U]nless § 2680(a) is to be drained of its meaning, it must apply to discretionary acts that are tortious."). Constitutional violations are best reserved and analyzed under *Bivens* and its progeny. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). "The inquiry is not about how poorly, abusively, or unconstitutionally the employee exercised his or her discretion but whether the underlying function or duty itself was a discretionary one." *Shivers*, 1 F.4th at 931 (11th Cir. 2021).

*B.A.D.J. v. United States,* CV-21-00215-PHX-SMB, 2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022) (emphasis added). This court is not bound by this out-of-circuit precedent.

### D. Fifth Circuit precedent also independently bars Plaintiffs' negligent supervision claims under the DFE.

Plaintiffs fail to address the United States' argument that the Fifth Circuit's decision in *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) independently bars Plaintiffs' claims of negligent supervision because federal employees' supervision of subordinates involves the kind of judgment the DFE was meant to protect. *See* ECF No. 105, p. 27. Therefore, because Plaintiffs fail to respond to this argument, their negligent supervision claim is abandoned. *See Trieger v. Ocwen Loan Servicing, LLC*, 3:19-CV-00100-L, 2019 WL 3860689, at *9 (N.D. Tex. Aug. 15, 2019) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

10

## II. Plaintiffs' Claims are also Barred by the FTCA's Exception for Actions Taken in Executing a Statute.

Plaintiffs' arguments relating to the applicability of the FTCA's exception for actions taken while executing a statute are equally unavailing. Relying primarily on *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005), as well as a series of out-of-circuit district court decisions that have followed *Welch*, Plaintiffs argue that this exception exempts the United States from tort liability only if a statute or regulation *requires* (rather than authorizes) the Federal employee to engage in the challenged conduct. However, the Fifth Circuit has never adopted this standard, which is inconsistent with the statute's plain language.[3] Section 2680 only references "execution" of a statute or regulation—language that is broad and encompasses both situations where a statute "requires" certain actions as well as circumstances where it merely "authorizes" certain actions. *See e.g., Borquez v. United States*, 773 F.2d 1050, 1052 (9th Cir. 1985) (exception barred claim where Secretary of the Interior was "authorized, in his discretion, to transfer … the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe."); *Doe v. DiGenova*, 779 F.2d 74, 88 n.26 (D.C. Cir. 1985) (actions authorized by regulations protected by exception); *Dupree v. United States,* 247 F.2d 819, 824 (3d Cir. 1957) (exception applies "[w]here government employees act

---

[3] To our knowledge, only a single district judge sitting within the Fifth Circuit has ever cited *Welch*, in rulings issued during the protracted consolidated litigation that arose out of the flooding in the city of New Orleans and surrounding parishes following Hurricane Katrina. *See In re Katrina Canal Breaches Consol. Litig.*, 627 F. Supp. 2d 656, 667 (E.D. La. 2009) (Duval, S.) (order denying parties' cross-motions for summary judgment); *In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d 644, 702 (E.D. La. 2009) (Duval, S.) *aff'd sub nom. In re Katrina Canal Breaches Litig.,* 673 F.3d 381 (5th Cir. 2012), *opinion withdrawn on reh'g,* 696 F.3d 436 (5th Cir. 2012), and *aff'd in part, rev'd in part sub nom. In re Katrina Canal Breaches Litig.*, 696 F.3d 436 (5th Cir. 2012) (post-trial findings of fact and conclusions of law). Notably, all the judgments awarding damages against the United States in the consolidated Hurricane Katrina litigation later were reversed on appeal. *See In re Katrina Canal Breaches Litig.*, 696 F.3d at 436. In reversing those judgments, the Fifth Circuit ruled that the DFE shielded the United States from liability, *id.* at 449–51, and thus did not address *Welch*.

pursuant to and in furtherance of regulations"); *Powell v. United States,* 233 F.2d 851, 855 (10th Cir. 1956) (exception barred claims based on employees' acts "performed under and in furtherance of the regulation … even though the regulation may be irregular or ineffective").

But even if the Court were to apply *Welch's* two-part test, the exception still would shield the United States from liability in this case. Here, as the United States explained in its Motion, the determination that D.A. and A.A. were "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE. *See* ECF No. 105, p. 19. Once the discretionary determinations were made to criminally prosecute Ms. Padilla-Gonzales for unlawfully entering the United States, she became unavailable to provide physical custody for her children. Her children then became "unaccompanied alien children," 6 U.S.C. § 279(g)(2), and the TVPRA required that DHS "*shall transfer the custody of such child* to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child," 8 U.S.C. § 1232(b)(3) (emphasis added). While Plaintiffs argue that 8 U.S.C. § 1232(b)(3) does not apply to this case because Plaintiffs were not victims of trafficking and were not unaccompanied alien children, Ms. Padilla-Gonzales was not available to provide physical custody of her children because she was being detained in an adult facility and the children could not be kept in such a facility with her. Thus, federal law authorized the separation. Indeed, the very cases Plaintiffs cite (ECF No. 118, p. 24) agree that "[w]hen a parent is charged with a criminal offense, the law ordinarily *requires* separation of the family." *Ms. L.*, 310 F. Supp. 3d at 1139 (emphasis added); *W.S.R. v. Sessions,* 318 F. Supp. 3d 1116, 1125 (N.D. Ill. 2018) ("The fathers' criminal detentions necessitated the separation of W.S.R. and C.D.A.").

Plaintiffs further argue that Defendant separated them due to the Zero-Tolerance Policy and therefore, the due care exception should not apply because that exception applies only to

statutes and regulations. ECF No. 118, p. 27. Yet in the next paragraph, Plaintiffs address 8 U.S.C. § 1232(b)(3) of the TVPRA, which as noted above, required that unaccompanied alien children be placed into ORR custody once the discretionary decisions to refer Ms. Padilla-Gonzales for prosecution and to prosecute her were made, rendering her unavailable to provide care and physical custody for D.A. and A.A.

Likewise, Plaintiffs' assertion that federal agents acted in a "cruel" or "tortious" manner in carrying out the separation misconstrues the scope of the FTCA's exception for actions taken while reasonably executing the law. The inquiry focuses on whether the government acted pursuant to statutes or regulations. *Hatahley v. United States*, 351 U.S. 173, 181 (1956). Plaintiffs do not allege that agents deviated from the statutory dictates of the TVPRA in transferring custody of Plaintiff's children to ORR—in fact, the transfer was statutorily required. The conduct upon which Plaintiffs' claims are based—the separation of Plaintiff from her children—resulted from the government's enforcement of federal statutes and thus the exception still applies.

## III. Plaintiffs' Claims are Barred Because There is No Private Person Analogue.

Plaintiffs' claims also fail because the challenged government acts have no private person analogue. As the United States established in its Motion, there is no private person analogue because Plaintiffs' claims arise out of the exercise of federal statutory authority that only the government possesses. *See* ECF No. 105, pp. 31-32. This is especially true when, as here, the statutory authority being exercised pertains to enforcement of federal immigration laws—namely those relating to whether and where to detain noncitizens pending immigration proceedings. *See Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration

and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign.").

Plaintiffs do not dispute that Ms. Padilla-Gonzales was lawfully prosecuted and held in criminal custody or secure adult immigration detention pending immigration proceedings. Thus, Plaintiffs' claims are essentially a challenge to where and with whom noncitizens are detained, and whether, when, and with whom to remove noncitizens. Such decisions are made pursuant to federal statutory authority and are in the sole province of the federal government; there is no private counterpart.

The cases cited in the United States' Motion involve the sort of decisions to prosecute and detain individuals charged with violating federal laws that are solely within the government's authority, regardless of whether they occur within the immigration context or not. *See* ECF No. 105, pp. 31-32. "Private persons cannot establish facilities to detain other persons—only the government can, either on its own or through a governmental contractor." *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016). The fact that Plaintiffs purport to bring "state law causes of action" for torts under the FTCA does not establish a private analogue where the alleged tortious conduct relates to functions that only the government can perform. To hold to the contrary would mean there would be a private analogue in every FTCA action, thereby reading this requirement out of the statute.

As noted in the United States' Motion, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson,* 546 U.S. 43, 46 (2005) (internal quotations omitted). ECF No. 105, p. 31. Plaintiffs argue that various Texas cases provide a private analogue to the conduct in

this case. But the cases cited by Plaintiffs are far afield from this case and are not analogous to a government actor exercising statutory authority in executing the immigration laws. For example, *Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986), *Smith v. Smith*, 720 S.W.2d 586, 600 (Tex. Civ. App.—Houston 1986), and *Weirich v. Weirich*, 796 S.W.2d 513, 515 n.3 (Tex. Civ. App.—San Antonio 1990), *writ granted* (Feb. 13, 1991), *rev'd on other grounds,* 833 S.W.2d 942 (Tex. 1992), involve family disputes about interference with child custody that are not analogous to the issues in this matter. *THI of Texas at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 573 (Tex. Civ. App.—Amarillo 2010) involves allegations of medical negligence for the death of a patient in a nursing home and has no parallels to the facts of our case. Finally, *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) and *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002) involve business disputes that, although they include allegations of breach of fiduciary duty, have no similarities to the allegations involved in our case. Therefore, Plaintiffs have provided no plausible private analogue for their allegations.

**IV.     Plaintiff Padilla-Gonzales' Claim of Conversion is Barred by the Detention of Goods Exception.**

In the United States' Motion, Defendant argued that Plaintiff Padilla-Gonzales' claim of conversion was barred by the detention of goods exception in 28 U.S.C. § 2680(c). Because Plaintiffs failed to address this argument in their Response, they have abandoned this claim. *See Trieger,* 2019 WL 3860689, at *9 (citing *Black*, 461 F.3d at 588 n.1).

**V.     Plaintiffs Fail to State a Claim Under Texas Law.**

   **A.     Plaintiffs fail to state a claim of intentional infliction of emotional distress.**

Plaintiffs concede that conduct that is taken during the enforcement of the criminal or immigration laws cannot constitute intentional infliction of emotional distress (IIED). ECF No. 118, p. 37. Therefore, Plaintiffs acknowledge that their IIED claim cannot derive from Ms.

Padilla-Gonzales' criminal prosecution or the application of the immigration laws to her and her children thereafter. *Id.* Instead, Plaintiffs assert that their First Amended Complaint describes multiple other instances of extreme and outrageous conduct. But the examples Plaintiffs provide are either incidental to the law enforcement activities relating to Ms. Padilla-Gonzales' criminal prosecution and immigration proceedings or are not independently actionable under IIED. For example, Plaintiff's allegations related to the manner in which she was separated all arise from the law enforcement conduct relating to the criminal prosecution and immigration proceedings. Further, under Texas law, intentional infliction of emotional distress is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Because Plaintiff Padilla-Gonzales' allegations related to her alleged physical injuries are more accurately classified as negligence, there is no gap to fill. Therefore, Plaintiff Padilla-Gonzales cannot state a claim for IIED for allegations of negligence.

As argued at length in the United States' Motion, where, as here, a parent is separated from his child due to the parent's criminal prosecution and/or immigration proceedings, the decision to separate is a consequence of those proceedings that cannot amount to intentional infliction of emotional distress under Texas law. Although Plaintiffs characterize this as an affirmative defense, the United States' Motion makes clear that they fail to state a claim for IIED. Indeed, Plaintiffs have failed to identify a single case holding that the separation of a parent from his child in connection with a criminal prosecution and/or immigration enforcement proceeding is extreme or outrageous under Texas law. This claim should be dismissed.

### B. Plaintiffs fail to state a claim for abuse of process.

Plaintiffs misunderstand the Texas tort of abuse of process. To state a claim for abuse of process, Plaintiff must plausibly allege that her criminal prosecution or immigration proceedings were unwarranted or unauthorized by law. *See E.L.A. v. United States*, 2:20-CV-1524-RAJ, 2022 WL 2046135, at *6 (W.D. Wash. June 3, 2022) *reconsideration denied*, 2:20-CV-1524-RAJ, 2022 WL 11212690 (W.D. Wash. Oct. 19, 2022) (dismissing claim for abuse of process under Texas law in family separation case). Here, however, Plaintiffs concede that they "have not challenged the application of criminal law to [Ms. Padilla-Gonzales] or the application of immigration law to all three Plaintiffs." ECF No. 118, p. 39. That concession is fatal to this claim.

Moreover, Plaintiffs also do not adequately allege any coercion or extortion, which forms the basis for the tort. *See Blackstock v. Tatum,* 396 S.W.2d 463, 468 (Tex. Civ. App.—Houston [1st Dist.] 1965, no writ history). Although Plaintiffs allege it does not matter whether Ms. Padilla-Gonzales ultimately signed any papers to relinquish any of her rights (ECF No. 118, p. 39), without such allegations, Plaintiffs further fail to state a claim. Plaintiffs' vague and conclusory allegations therefore fail to state a legally cognizable claim of abuse of process under Texas law.

### C. Plaintiffs fail to state a claim of medical negligence.

As explained in the United States' Motion to Dismiss, a claim for medical negligence under Texas law, as opposed to ordinary negligence, can only be brought for a physician or hospital's breach of the medical standard of care. Plaintiffs assert no such breach here, but contend that they have met the requirements of Rule12(b)(6) because non-medical providers may be liable for "medical negligence" where they fail to provide individuals in their control access

17

to medical care. ECF No. 118, pp. 39-40. In support of this argument, Plaintiffs cite to two cases that do not involve the FTCA, and that do not even support their contention that non-medical providers may be liable for medical negligence. The Texas Supreme Court case of *Texas Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30 (Tex. 2002) involves the question of whether and under what circumstances an intermediate care facility for the mentally disabled owes a duty of care to a person murdered by a resident of the facility. *Id.* at 32. The case focuses on whether a facility that takes charge of persons likely to harm must exercise reasonable care in its operation to avoid foreseeable attacks by its charges upon third persons. *Id*. at 39. Because *Texas Home Mgmt.* involves ordinary negligence and the duty owed to third parties, and not medical negligence, which is akin to medical malpractice, *see Jones v. United States*, CV-20-02145-PHX-SMB, 2021 WL 5505787, at *4 (D. Ariz. Nov. 24, 2021), it does not support Plaintiffs' argument that they can state a claim for medical negligence against non-medical providers.

Similarly, the case of *St. Paul Med. Ctr. v. Cecil*, 842 S.W.2d 808, 813 (Tex. App. 1992), which involves an organization's duty to supervise its employees, is also irrelevant as to Plaintiffs' claims of medical negligence. Thus, Plaintiffs' allegations fail to state a legally cognizable claim of medical negligence.

## VI.   Conclusion

For the foregoing reasons, Defendant United States requests that this action be dismissed.

Respectfully submitted,

**JAIME ESPARZA**
UNITED STATES ATTORNEY

/s/ Angelica A. Saenz
**MANUEL ROMERO**
Assistant United States Attorney
Texas State Bar No. 24041817
Email: Manuel.Romero@usdoj.gov
**ANGELICA A. SAENZ**
Assistant United States Attorney
Texas State Bar No. 24046785
Email:  angelica.saenz@usdoj.gov
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
Office: (915) 534-6555
Facsimile: (915) 534-3490
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants: Joe A. Spencer, Anand Swaminathan, Stephen H. Weil, Zachary Manfredi, and Ming Tanigawa-Lau, *Attorneys for Plaintiffs.*

/s/Angelica A. Saenz
**ANGELICA A. SAENZ**
Assistant United States Attorney